E-Filed 7-27-11

SHELLEY D. KROHN, LTD.
SHELLEY D. KROHN, ESQ.
Nevada Bar No. 5040
E-mail: shelley@krohnlawoffice.com
228 S. 4th Street, Suite # 300
Las Vegas, Nevada 89101
Telephone: (702) 421-2210
Facsimile: (702) 366-1939
*Attorneys for Chapter 11 Trustee,*
*Brian D. Shapiro*

LAW OFFICE OF BRIAN D. SHAPIRO, LLC
BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772
E-mail: bshapiro@brianshapirolaw.com
228 S. 4th Street, Suite #300
Las Vegas, NV 89101
Telephone: (702) 386-8600
Facsimile: (702) 383-0600
*Attorneys for Chapter 11 Trustee,*
*Brian D. Shapiro*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>EQUIPMENT MANAGEMENT TECHNOLOGY,<br><br>Debtor. | Case No.: BK-S-11-11816-LBR<br>Chapter 11<br><br>Date: OST PENDING<br>Time: OST PENDING |

**MOTION FOR AN ORDER AUTHORIZING AND APPROVING THE: (I) SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS TO ELECTRO RENT CORPORATION FREE AND CLEAR OF ALL CLAIMS, LIENS, INTEREST AND ENCUMBRANCES, (II) AUTHORZING THE ASSUMPTION AND ASSIGNMENT OF VARIOUS EXECUTORY CONTRACTS AND UNEXIRED LEASES IN CONNECTION THEREWITH, AND (III) GRANTING RELATED RELIEF**

Equipment Management Technology, a Nevada corporation ("EMT" or "Debtor"), by and through Brian D. Shapiro, the Chapter 11 Trustee ("Seller" or "Trustee"), respectfully submits his motion (the "Motion") for an order (i) authorizing the sale of substantially all of the Debtor's assets free and clear of all liens, claims, interests and encumbrances; (ii) authorizing the assumption and assignment of various executory contracts and unexpired leases in connection therewith and; (iiii) granting related relief.

This Motion is based upon the points and authorities herein, the Declaration of Brian D. Shapiro (the "Shapiro Declaration") filed in support hereof, the pleadings and papers on file with the Court (judicial notice of which is respectfully requested), and any oral argument and additional testimony that this Court may permit at the time of the hearing on this Motion.

# I.
# JURISDICTION AND VENUE

1. On February 9, 2011 (the "Petition Date"), EMT filed its voluntary petition for relief under Chapter 11, title 11 of the U.S. Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy case (the "Chapter 11 Case").[1]

2. Debtor initially operated its business as a debtor-in-possession, however, on March 15, 2011, the Court entered an Order Directing the Appointment of a Chapter 11 Trustee [ECF No. 134] over the Debtor pursuant to Section 1104(a)(2) of the Bankruptcy Code. On March 16, 2011, the Court entered an Order Approving the Appointment of Brian D. Shapiro as the Chapter 11 Trustee [ECF No. 141]. The Trustee now has full power and authority to operate and manage the Debtor's business and affairs.

3. The Bankruptcy Court has jurisdiction over this matter pursuant to 29 U.S.C. §§ 157(b)(1) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M), and (N). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M), and (N).

4. Venue of EMT's Chapter 11 Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory basis for the relief sought herein is Sections 105, 363, 365, 1107, and 1108 of the Bankruptcy Code, as complimented by Bankruptcy Rules 6004 and 6006.

# II.
# SUMMARY OF RELIEF REQUESTED

6. On July 27, 2011, the Seller executed that certain Asset Purchase Agreement (the "Purchase Agreement") with Electro Rent Corporation, a California corporation (the "Buyer"). A true and correct copy of the Purchase Agreement (less certain redactions) is attached to the Shapiro Declaration as Exhibit "1" thereto. The Purchase Agreement requires a private sale of

---

[1] All references to "Chapter" and "Section" herein are to the "Bankruptcy Code" and all references to a "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure. Unless otherwise defined herein, all capitalized terms herein shall have the same meaning as set forth in the Purchase Agreement. Nothing herein is intended to modify or shall be deemed to modify the terms of the Purchase Agreement. To the extent there may be a difference between this Motion and the Purchase Agreement, the Purchase Agreement shall control.

substantially all of the Debtor's assets to Buyer on the terms and subject to the conditions as more fully set forth therein.

7. By way of this Motion, the Trustee requests that the Court authorize and approve the Buyer's acquisition of substantially all of the Debtor's assets for a Purchase Price of $11,084,291.00, less various potential adjustments including but not necessarily limited to an escrowed sum of $500,000.00, on the terms and subject to the conditions as more fully described in the Purchase Agreement.

### III.
### STATEMENT OF FACTS

**A.    Background Regarding EMT's Business**

8. EMT operates a small business which offers rental and leases of test and measurement equipment for the Aerospace Industry. EMT also calibrates and maintains such equipment.

9. EMT is a veteran-owned business and prior to the appointment of the Trustee was operated by a Receiver which was appointed by the State District Court of Clark County Nevada. Prior to the appointment of such Receiver, the business was operated by Vito Longo ("Longo") who is the sole shareholder of EMT.

10. The appointment of the Receiver was a result of EMT defaulting on a loan with FCC, LLC, d/b/a First Capital Western Region, LLC ("FCC").

11. The defaulting loan was originally based upon the following: on August 25, 2008, EMT, as borrower, and FCC, as lender, entered into a Loan and Security Agreement (as amended or otherwise modified from time to time, the "Loan Agreement" and together with all other loan documents referenced herein, the "Loan Documents") in the original principal amount of up to $22,000,000.00 (the "Indebtedness"). Pursuant to the Loan Agreement, FCC made available advances and extended financial accommodations to or on behalf of EMT.

12. The Indebtedness under the Loan Agreement is secured in part by a first priority security interest in all of EMT's property, whether real or personal, tangible or intangible, now owned or existing or hereafter acquired or arising, including without limitation all property listed

in Section 5(a) of the Loan Agreement (collectively, the "Collateral").

13. FCC perfected its security interests in the Collateral by timely filing financing statement(s) with the applicable authorities, as a result of which FCC has a perfected security interest in the Collateral, including but not limited to all "cash collateral" as that terms is used in Section 363 of the Bankruptcy Code (the "Cash Collateral"), which Cash Collateral includes but is not limited to EMT's cash and cash equivalents, EMT's bank accounts as of the Petition Date, and cash generated or received by EMT from and after the Petition Date.

14. On August 25, 2008, Longo executed a Continuing Guaranty (the "Longo Guaranty") in favor of FCC for the Indebtedness and related obligations under the Loan Documents.

15. On August 12, 2009, FCC, EMT, Longo and others entered into an Amendment Number One to Loan and Security Agreement (the "Loan Amendment"). Pursuant to the Loan Amendment, FCC agreed, subject to EMT, Longo and others, satisfying certain conditions as described therein, to waive defaults under the Loan Agreement.

16. On July 26, 2010, FCC, EMT, Longo and various other parties entered into a Forbearance Agreement (the "Forbearance Agreement"). The Forbearance Agreement acknowledged that certain events of default had occurred under the Loan Documents, but that, subject to the conditions set forth therein, FCC agreed to forbear until February 28, 2011 from exercising its secured creditor remedies.

17. On October 1, 2010, FCC sent EMT a Notice of Default and Demand for Payment, which identified additional valid events of default and, consistent with the Forbearance Agreement, demanded payment in full of all outstanding obligations under the Loan Documents. Valid events of default continued to exist under the Loan Documents through the Petition Date.

18. On February 23, 2011, the Court entered an Interim Order Regarding Debtor's Emergency Motion for Use of Cash, Including Cash Collateral (the "Interim Order") [ECF No. 76], thereby granting the Debtor interim approval, subject to the terms and conditions therein, for the limited and emergency use of cash collateral pending a final hearing.

19. On June 15, 2011, the Trustee filed a Motion for Final Approval of Stipulation

Law Office of
Brian D. Shapiro, LLC
228 S. 4th St. Suite 300
Las Vegas, Nevada 89101
(702) 383-0994

1  Authorizing Use of Cash Collateral by Debtor and Granting Adequate Protection [ECF No. 192]
2  (the "Cash Collateral Motion"), attached to which was a proposed Stipulation Authorizing the
3  Use of Cash Collateral by Debtor and Granting Adequate Protection (the "Cash Collateral
4  Stipulation"). The Cash Collateral Stipulation imposed certain case "milestones" on the Trustee,
5  including the following:  (a) failure, by October 1, 2011, to have an order entered by the Court,
6  and on terms and conditions satisfactory to FCC, authorizing the sale of all or substantially all of
7  the Debtor's assets pursuant to Section 363 of the Bankruptcy Code, or (b) failure, by December
8  1, 2011, to close on a sale of all or substantially all of the Debtor's property. See Cash Collateral
9  Stipulation, §§ 10(m) and (n).

10        20.    On June 29, 2011, the Court held a hearing on the Cash Collateral Motion and,
11  without any opposition, orally approved it.

12        21.    On July 6, 2011, the Court entered an Order Approving Stipulation Use of Cash
13  Collateral by Debtor and Granting Adequate Protection (the "Cash Collateral Order") [ECF No.
14  200]. The Cash Collateral Order reflects that FCC is owed the principal sum of not less than
15  $11,899,378.43 plus other sums including without limitation unpaid interest, costs, late fees and
16  attorneys' fees and has received adequate protection in the form of a security interest in any and
17  all Collateral and obtained a Replacement Lien, as those terms are defined, in all of the assets of
18  the Debtor.

19        22.    Upon information and belief, as of July 31, 2011, FCC asserts that it is owed the
20  sum of not less than $12,520,212.68 in principal, interest and other fees and expenses under the
21  Loan Documents. The Trustee takes no position with respect to the FCC's calculation of the
22  amount of its debt.

23  **B.    The Trustee's Post-Petition Marketing Efforts to Sell the Business.**

24        23.    Within one year prior to the Petition Date, EMT did not market the business for
25  sale. Rather, EMT, by and through Longo, attempted to obtain replacement financing for EMT.
26  Longo failed to obtain such financing.

27        24.    Within one year prior to the Petition Date and prior to the appointment of the
28  Trustee in the Chapter 11 Case, Longo and EMT continued to attempt to obtain financing and

attempted to sell EMT to Global Test Equipment ("GTE"), which is owned and operated by Longo's daughter. Longo failed to obtain post-petition financing for EMT, and the parties were unable to agree to the terms of a proposed sale because GTE's proposed purchase price was substantially less that the fair market value of the company and, indeed, substantially less than the Purchase Price of ERC in the Purchase Agreement.

25. EMT's main business is through Northrop Grumman Corporation ("Northrop"). Four (4) main companies that are permitted to sell applicable equipment to Northrop. Such companies are: EMT, GTE, Buyer and TRS-Rentelco (collectively, the "Authorized Sellers")

26. The Trustee has contacted such Authorized Sellers. Due to confidentiality agreements, the Trustee is filing, with a request to seal, any and all offers made by such Authorized Sellers.

27. The Trustee inquired into Longo to assist in advertising such sale. Longo advised the Trustee that there are only three (3) companies that would ever be interested in purchasing EMT. Such companies are the Authorized Sellers. Longo was also requested to provide a name of an applicable advertising source such as a magazine or newspaper. Longo failed to provide the Trustee with any additional advertising location.

28. The Trustee also advertised the business for sale on a web site called DailyDac.com. DailyDac provides subscribers with opportunities that are not widely publicized to acquire, invest in, or finance non-public companies and/or assets in time sensitive situations.

29. The Trustee has reviewed at least four (4) appraisals for the assets of EMT. Copies of the appraisals are being submitted under seal to prevent any prospective purchaser to become aware of the information contained therein.

30. The Trustee has obtained multiple offers to purchase the Assets of EMT. Based upon a confidentially provision, the offers are being filed under seal. The Trustee has determined that the sale to the Buyer is the best offer received to date and is a cash sale that is not subject to any financing.

31. The Trustee has been advised by Longo on several occasions that he had obtained or was about to obtain financing to buy out FCC. Such financing never occurred.

Law Office of
Brian D. Shapiro, LLC
228 S. 4th St. Suite 300
Las Vegas, Nevada 89101
(702) 383-0994

### C. Post-Petition Status of the Debtor.

32. The Trustee has removed one employee from the business whom is subject to termination per the filing of an applicable motion.

33. The Trustee has removed Longo from the Debtor's operation by his unauthorized removal of corporate financial information and a lack of trust by the Trustee. The Trustee is filing an applicable motion to terminate Longo as an employee.

34. The Debtor continues to operate solely on its current inventory, equipment calibration along with its rental and lease income. Only minimal additional business has obtained after the bankruptcy filing. As the Debtor is unable to purchase new inventory, it has a limited ability to continue to compete with the Authorized Sellers.

35. The Debtor also has a large lease payment due on a monthly basis to an affiliated company of Longo called Longo Properties, LLC, a Nevada limited liability company, along with a large payment to Longo for his employment with EMT. The Trustee believes that the Debtor needs substantially less space than that which is provided under this unexpired lease, thus causing the estate to incur significant unnecessary expenses as it continued to operate.

### D. Consent by FCC and Payments to Estate from Sale.

36. FCC has been consulted on the sale to Buyer, consents to this sale, and has actively participated in the negotiation and documentation of the proposed sale transaction along with the Trustee and his counsel.

37. Pursuant to the Cash Collateral Stipulation, FCC has agreed to pay the Trustee his statutory fee from the operation and sale of EMT, attorneys' fees and accountant fees which have and will be incurred up to and after the closing of the sale to Buyer (as it relates to the operation of the business and sale only), all of the terms and subject to the conditions as more specifically set forth therein.

38. As more specifically set forth in a separate motion filed contemporaneously with this Motion, FCC has also consented to a payment from the proceeds of this sale for the benefit of unsecured creditors of the Debtor's bankruptcy estate of up to the total sum of $300,000 (the "Unsecured Creditor Carveout"). If any funds in the Unsecured Creditor Carveout are not

needed then any balance will be returned to FCC. Without the Unsecured Creditor Carveout, the Trustee does not believe that there are any other unencumbered funds available or potential proceeds from avoidance actions available to pay any unsecured creditors.

**E.    Justifications for the Proposed Sale.**

39.    First, the Trustee believes that a sale as the Debtor's business as a whole, and while it is still operating, instead of separate, piecemeal sales post-closure, will result in the quickest and most economical process, and also generate the highest and best price for its assets.

40.    Second, since the appointment of the Trustee, the Trustee has received numerous offers for the purchase of the Debtor's assets, however, some offers were subject to financing and others were not acceptable with the Trustee and FCC due generally to their inferior price. Such other offers are being filed under seal with this Court. The Purchase Price offered by Buyer, as well as the terms and conditions therein, are superior to the other offers the Trustee has received.

41.    Third, the Trustee encouraged Longo to seek financing and/or assist GTE in the purchase of such assets, however, Longo has failed to obtain such financing. In fact, as more specifically detailed in a separate motion filed contemporaneously herewith, the Trustee has been forced to remove Longo from the Debtor's property and is seeking to terminate Longo because of his intentional removal of information from the computer databases of the Debtor post-petition and in direct contravention of the Trustee's explicit instructions to him.

42.    Fourth, the Trustee does not have the ability to obtain new inventory and other financing, that the Debtor lacks the ability to reorganize and thus that a timely liquidation of the Debtors is the only appropriate avenue remaining.

43.    Fifth, the Debtor's cost to lease its current premises is approximately $38,000.00 per month, which cost is necessary for the continuation of the business. The real property is not fully utilized and such cost could be minimized by moving. The moving of the business is not a feasible solution because the cost to move includes an operational laboratory which calibrates equipment and will result in the business incurring significant costs of which such funds are not available.

44. Sixth, the Cash Collateral Stipulation requires the Trustee to either sell the Debtor's assets or obtain an approved Chapter 11 liquidating plan in the near future. Neither the Trustee nor Longo are unable to obtain financing to continue to operate the business to create an applicable plan of organization. If the Trustee is not permitted to conduct an immediate sale, then it is likely that FCC will terminate the stay, per the Cash Collateral Stipulation, to permit the foreclosure of the property and thereby result in no unsecured creditors receiving any distribution.

45. Seventh, the passage of time since the Trustee's appointment has resulted in the Debtor's continuing to sell its inventory resulting in a reduction of the assets of the Debtor. The reduction in inventory, without the continuation of purchasing such assets, has caused the value of the Debtor's assets to continue to decline.

46. Finally, as a result of all of the foregoing, among other factors, the value of the Debtor's assets, are declining as evidenced by the offers received, the continuing depreciation through use and obsolescence of the Debtor's equipment. Moreover, in addition to the problems the Trustee has experience with Longo, various other critical employees have given their notice that they are leaving, or have threatened to leave, thereby potentially the Debtor's continued long-term viability at substantial risk. The Trustee believes that a closure of the Debtor's business would result in a catastrophic reduction in the value of the Debtor's business, instead of the currently proposed sale as a going concern and while the Debtor is continuing to operate.

47. In sum, the Trustee's evaluation of the fair market value of the purchased assets for the requested price is proper, fair and reasonable. The sale of the Purchased Assets will further benefit the bankruptcy estate by allowing the unsecured creditor to receive some portion of funds in lieu of not receiving any payment per the Unsecured Creditor Carveout (as hereinafter defined). In sum, sufficient and compelling reasons exist to support the Trustee's business judgment that the proposed sale be approved.

F. **The Proposed Purchase Agreement.**

48. The Purchased Assets constitute all of EMT's assets and include tangible assets, intellectual property, software, domain names, leases of equipment, rentals of equipment,

Law Office of
Brian D. Shapiro, LLC
228 S. 4th St. Suite 300
Las Vegas, Nevada 89101
(702) 383-0994

9

inventory, account receivables and some rights of actions. The Purchased Assets exclude certain Excluded Assets (as defined in the Purchase Agreement and specifically exclude any tax refunds and avoidance actions. The Trustee believes that the Purchased Assets are fully encumbered by the liens of FCC. FCC has agreed to such sale and shall release it lien on the assets as contemplated in the Purchase Agreement, with FCC's lien attaching to the proceeds of such sale.

49.     The proposed sale and assignment of the Purchased Assets to Buyer shall be made on the terms set forth in the Purchase Agreement. The sale price as described in the Purchase Agreement is for $11,403,154.00, which amount is subject to adjustment up to a maximum of $500,000.00 and as defined in the Purchase Agreement. Due to the Purchase Price offered by Buyer and the critical status and ongoing questionable viability of EMT, the Trustee is seeking to sell the Purchased Assets to Buyer at a private sale that is not subject to overbids and on a somewhat expedited basis.

## IV.
## LEGAL ARGUMENT

**A.     The Court May Approve a Sale of Assets Outside the Ordinary Court Where There Exists an Articulated Business Justification.**

50.     The Trustee requests that the Court determine that (a) the proposed sale outside the ordinary course of the Debtor's business is appropriate; (b) the proposed sale may be made free and clear of liens, claims, interests and encumbrances; (c) the proposed sale has been entered into in good faith; and (d) the Trustee has satisfied the requirements for assuming and assigning the Assumed Agreements to the Buyer.

51.     Section 363(b)(1) of the Bankruptcy Code governs the sale of property of a bankruptcy estate, and provides, in pertinent part, as follows: "The trustee, after notice and hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate…" 11 U.S.C. § 363(b)(1). In order to obtain approval of a sale pursuant to Section 363(b) of the Bankruptcy Code, a trustee must demonstrate a valid business justification to grant the request. See, *240 North Brand Partners, Ltd. v. Colony GFP Partners (In re 240 North Brand Partners, Ltd.)*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); *Walter v. Suntrust Bank (In re*

*Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988).

52. Consistent with the foregoing, the bankruptcy courts consider a wide range of factors in approving sales outside of the ordinary course of business, generally including the following:

    a. Whether a sufficient business reason exists for the sale;

    b. Whether the proposed sale is in the best interests of the estate, which considers the following factors:

        (i) That terms of the sale are fair and reasonable;

        (ii) That the proposed sale has been adequately marketed;

        (iii) That the proposed sales terms have been properly negotiated and proposed in good faith; and

        (iv) That the purchaser is involved in an "arms-length" transaction with the seller; and

    c. Whether notice of the sale was sufficient.

See, *Walter*, 83 B.R. at 19-20.

53. The bankruptcy court should consider all factors pertaining to the proceeding and accordingly, act to further the diverse interests of the debtor, creditors and equity holders alike. It is not necessary for the bankruptcy court to consider each factor listed in the cases, or to use any specific set of factors. See, *240 North Brand Partners, Ltd.*, 200 B.R. at 659; *In re Work Recovery, Inc.*, 202 B.R. 301, 304 (Bankr. D. Ariz. 1996) (using a six factor-test). Moreover, to the extent that any factors are utilized, there is no necessity that those factors must be given equal weight to determine the outcome. See, *Matter of Embrace Sys. Corp.*, 178 B.R. 112 (Bankr. W.D. Mich. 1995).

54. In ruling on a motion to sell assets outside of the ordinary course of business, court recognize that a Trustee's application of its sound business judgment in the use, sale, or lease or property is subject to great judicial deference. See, *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *In re Canyon P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).

Law Office of
Brian D. Shapiro, LLC
228 S. 4th St. Suite 300
Las Vegas, Nevada 89101
(702) 383-0994

55. In this case, it is appropriate to approve the sale of the Purchased Assets pursuant to Section 363 of the Bankruptcy Code. The orderly liquidation of the Purchased Assets is essential in order to maximize return to the bankruptcy estate and the creditors thereof, to avoid the unnecessary cost and expense of the selling the assets individually and the delay the resulting further diminution of assets of the estate.

56. The sale of the Debtor's Purchased Assets should be approved as the sale of such assets allowed the estate to liquidate such property for the benefit of the creditors of this Bankruptcy Estate. The Trustee has determined that it cannot reorganize as a going concern and instead must be liquidated in short order. This decision is primarily predicated upon the fact that Debtor's business is in a precarious operating position and liquidation is the most certain way to promote the satisfaction of the secured claim against the Debtor's estate and payments to the Debtor's unsecured creditors. The proposed sale liquidates Debtor's assets in the most profitable and most efficient manner possible, supporting the Trustee's determination that the proposed sale is in the best interests of the estate.

57. The determination to enter into the specific terms of the Purchase Agreement is also based upon the Trustee's business judgment, and with a valid business justification. The sale of the Purchased Assets has been negotiated over time with the Buyer and FCC, and after deliberation and review of potential options by the Trustee. The proposed Purchase Agreement terms have been properly negotiated and proposed in good faith, and were negotiated at arms' length with the Buyer. In determining to enter into the Purchase Agreement with the Buyer, the Trustee concluded that the purchase price and other terms offered were the best available in terms of net benefit to the bankruptcy estate. The Trustee further believes that the sale of the Purchased Assets will benefit the bankruptcy estate by accelerating the liquidation of the bankruptcy estate. Based upon the foregoing, the proposed sale of the Purchased Assets has a valid business justification.

**B. The Court Should Find That The Terms of the Purchase Agreement Have Been Entered Into by the Parties in Good Faith.**

58. In addition to proving that the proposed sale has a valid business justification, the

Trustee must also show that the sale is proposed in good faith. See, *240 North Brand Partners, Ltd.*, 200 B.R. at 659 (citing *In re Wilde Horse Enterps., Inc.*, 136 B.R. 830-841 (Bankr. C.D. Cal. 1991)). "Good faith" encompasses fair value, and further speaks to the integrity of the transaction. Typical "bad faith" or misconduct would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers." Id. (quoting *Wilde Horse Enterps., Inc.*, 136 B.R. at 842.)

59. The purpose of such a finding is to facilitate the operation of Section 363(m) of the Bankruptcy Code, which provides a safe harbor for purchasers of a debtor's property when the purchase is made in "good faith." Section 363(m) of the Bankruptcy Code serves the important purposes both of encouraging good faith transactions and of preserving the finality of the bankruptcy court's orders unless stayed pending appeal. See, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986). If purchasers at court-approved 363 sales of property of a bankruptcy estate, and their lenders, cannot rely on the purchase agreement and transfer documents they receive at the sale, it will be difficult to liquidate bankruptcy estates at positive prices.

60. In this case, the proposed sale has been entered into in good faith and Buyer is entitled to the safe harbor provided by Section 363(m) of the Bankruptcy Code. The negotiations between Buyer and the Trustee were at all times conducted at arms' length and in good faith, and there are no side agreements, arrangements, or understandings between the Trustee and Buyer, and all of the consideration to be provided by Buyer to be received by the Bankruptcy Estate is as set forth in the Purchase Agreement. There is no consideration for the Purchased Assets or in connection with the proposed sale other than as set forth in the Purchase Agreement.

61. The Buyer is not an insider or an affiliate of the Debtor. Rather, the Buyer is a publicly traded corporation which is required to comply with rules and regulations for such publicly traded entities. Throughout the negotiations, the Trustee acted with the intent of obtaining the best possible deal for the bankruptcy estate.

62. Moreover, the Trustee believes that the sale price and other terms of the Purchase Agreement represent the best terms available in the market. The Trustee's negotiations with

other potential buyers in the marketplace and the Trustee's own awareness of the value of the Purchased Assets have led the Trustee to conclude that overall, the terms of the sale, including the price, are fair in the marketplace.

63. As set forth above, the terms of the Purchase Agreement were entered into by both the Trustee and Buyer in good faith and the Buyer is entitled to the protection of the safe harbor clause of Section 363(m) of the Bankruptcy Code in the event that this Court's order is appealed without a stay.

C. **Sale of Property Free and Clear of Liens under 11 U.S.C. § 363(f).**

64. Once the Court determines that a valid business justification exists for the sale, thus permitting the sale of estate assets, the Court must then determine whether such a sale can be made free and clear of existing liens. The FCC has a lien against all of the Purchased Assets, but has consented to the terms of sale which provide for adequate protection payments to the FCC as well as payment of the sale proceeds directly to the FCC along with payment to the Trustee, his counsel and to the Bankruptcy Estate.

65. Under Section 363(f) of the Bankruptcy Code, property of the bankruptcy estate can be sold free and clear of liens under five (5) conditions. See, 11 U.S.C. § 363(f). Section 363(f) of the Bankruptcy Code is written in the disjunctive; thus satisfaction of any one of the five conditions is sufficient to sell the property free and clear of liens. See, *Citicorp Mortgage, Inc. v. Brooks (In re Ex-Cel Concrete Co.)*, 178 B.R. 198, 203 n. 7 (B.A.P. 9th Cir. 1995).

66. First, pursuant to Section 363(f)(2) of the Bankruptcy Code, to the extent any secured creditor or lienholder that receives notice does not file a written objection to this Motion, such party should be deemed to have consented to the sale of the assets. See, *In re Metro. Mortgage & Secs. Co.*, No. 04-00757, 2007 WL 2277573, at *4 (Bankr. D.N.J. May 11, 2007). In the case at hand, FCC, who is the Debtor's only secured creditor, consents to the sale. As such, the sale satisfies Section 363(f)(2) of the Bankruptcy Code as to FCC.

67. Second, pursuant to Section 363(f)(4) of the Bankruptcy Code, to the extent that a lien not of record is asserted against the assets, such lien is subject to a bona fide dispute. Accordingly, the sale can and should be authorized free and clear of such liens. See, *In re*

*Octagon Roofing*, 123 B.R. 583 (Bankr. N.D. Ill 1991). A bankruptcy court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of debt, but need not determine the outcome of any dispute, only its presence or absence. See, *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1064 (9th Cir. 2002); *Austein v. Schwartz (In re Gerwer)*, 898 F.2d 730, 733 (9th Cir. 1990). At the time of the filing of this Motion, the Trustee is unaware of any liens, except for those asserted by the FCC. The Trustee reserves his right to augment this Motion should such a bona fide dispute be discovered prior to the time of the hearing on this Motion with respect to any alleged secured creditors other than FCC.

68. Finally, the Trustee reserves his right to assert that that it may sell under Section 363(f)(5) of the Bankruptcy Code if it becomes necessary to resort to that provision.

**D.   The Court Should Approve the Assumption and Assignment of the Assumed Agreements Pursuant to Section 365(a) of the Bankruptcy Code.**

69. Section 365(a) of the Bankruptcy Code permits the assumption of executory contracts and unexpired leases, subject to the Court's approval. See, 11 U.S.C. § 365(a). Section 365(f) (2) of the Bankruptcy Code provides the authority for a Trustee to assign executory contracts and unexpired leases. See, 11 U.S.C. § 365(f)(2).

70. Although Section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a Trustee's decision to assume and assign executory contracts or unexpired leases, courts have consistently applied a "business judgment" test when reviewing such a decision. See, *Group of Inst. Invs. v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943); *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007). The primary concern in this regard is whether the assumption benefits the bankruptcy estate. See, *In re Ponoma Valley Med. Grp.*, 476 F.3d at 670; *In re Chi-Feng Huang*, 23 B.R. at 801; *Pacific Shores Dev., LLC v At Home Corp. (In re At Home Corp.)*, 292 B.R. 195, 199 (N.D. Cal. 2003).

71. As applied to the case at hand, the assumption and assignment of the Assumed Agreements is a necessary part of the Purchase Agreement, and thus the assumption is a proper exercise of the Trustee's business judgment. A list of the Assumed Agreements proposed to be

assumed and assigned to the Buyer is included in Schedules 5.13-5.16 of the Purchase Agreement. Any non-Debtor party to such an agreement who objects to the assumption and assignment of its agreement must file and serve a timely objection to this Motion or be forever barred from asserting such objection. The Assumed Agreements will be assumed by the Trustee and assigned to Buyer effective upon the Closing Date as set forth in the Purchase Agreement.

72. The Trustee asserts that there are no cure payments required to be made to any counterparty to an Assumed Agreement. Any non-Debtor party to an Assumed Agreement who believes a cure payment is required under its agreement prior to its assumption and assignment must file and serve a timely objection to this Motion or be forever barred from asserting such objection. If any objection to the cure amount is filed and served, the Trustee and Buyer reserve the right to remove the agreement from the list of Assumed Agreements to be assumed and assigned to Buyer.

73. Whether there exists "adequate assurance of future performance" as required under Bankruptcy Code Section 365(b)(1)(C) of the Bankruptcy Code involves a factual inquiry, requiring case-by-case consideration. See, *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309-10 (5th Cir. 1985); *In re Lafayette Radio Elecs. Corp.*, 9 B.R. 993, 998 (Bankr. E.D.N.Y. 1981). Any non-Debtor party to an Assumed Agreement who objects to the Buyer's ability to adequately perform under its agreement in the future must file and serve a timely objection to this Motion or be forever barred from asserting such objection. In the event a party to an Assumed Agreement challenges Buyer's ability to provide adequate assurance of future performance, Buyer will provide the Court and/or such party with supplemental evidence of its financial wherewithal to perform the contract as issue.

## V.
## CONCLUSION

The Trustee requests that the Court order as follows:

1. Authorize and approve the sale to Buyer pursuant to the proposed form of Sale Order attached to the Purchase Agreement as Exhibit "B" thereto.

2. Authorize and approve the assumption and assignment of the Assumed

Agreements to the Buyer.

3. Authorize the Trustee to sign any and all documents necessary to consummate the sale to Buyer.

4. Grant the Trustee such other and further relief as is just and proper, including but not limited to waiving any stay of such sale pursuant to Bankruptcy Rule 6004(h) and make such order effective and enforceable immediately upon entry and its provisions shall be self-executing

DATED: July 27, 2011.

LAW OFFICE OF BRIAN D. SHAPIRO, LLC

By: /s/ Brian D. Shapiro
BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772
E-mail: bshapiro@brianshapirolaw.com
228 S. 4th Street, Suite #300
Las Vegas, NV 89101
Telephone: (702) 386-8600
Facsimile: (702) 383-0600
*Attorneys for Chapter 11 Trustee,
Brian D. Shapiro*