MARJORIE A. GUYMON, ESQ.
Nevada Bar No. 4983
Email: mguymon@goldguylaw.com
NEDDA GHANDI, ESQ.
Nevada Bar No. 11137
Email: nghandi@goldguylaw.com
**GOLDSMITH & GUYMON, P.C.**
2055 Village Center Circle
Las Vegas, Nevada 89134
Telephone:  (702) 873-9500
Facsimile: (702) 873-9600
Attorneys for Global Test Equipment, Inc.

E-FILED:   8-5-11

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

In re:                                                    )          BE-S 11-11816-LBR
                                                          )          Chapter 11
EQUIPMENT MANAGEMENT TECHNOLOGY,  )
                                                          )
                                                          )          Hearing Date:  August 11, 2011
                      Debtors.                  )          Hearing Time: 10:30 a.m.
_____)


**GLOBAL TEST EQUIPMENT, INC.'S COMPETING OFFER TO PURCHASE
DEBTOR'S ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, INTERESTS AND
ENCUMBRANCES AND ASSUMPTION AND ASSIGNMENT OF VARIOUS
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND OBJECTION TO
PROPOSED SALE OF ASSETS TO ELECTRO RENT CORPORATION**

Comes now Global Test Equipment, Inc. ("GTE"), by and through counsel, Goldsmith &

Guymon, P.C., and hereby files its Competing Offer to Purchase Debtor's Assets Free and Clear of

All Claims, Liens, Interests and Encumbrances and Assumption and Assignment of Various

Executory Contracts and Unexpired Leases ("Competing Offer") and Objection to Proposed Sale of

Assets to Electro Rent Corporation ("Objection").  Said Competing Offer and Objection are based

upon the accompanying Memorandum of Points and Authorities, the Exhibits attached hereto, all

pleadings and papers on filing herein, the supporting Declaration of Amy Perry, and the oral

argument of counsel upon hearing.

DATED: Aug 5, 2011.

GOLDSMITH & GUYMON, P.C.

By: _____
Marjorie A. Guymon, Esq.
Nevada Bar No. 4983
Nedda Ghandi, Esq.
Nevada Bar No. 11137
2055 Village Center Circle
Las Vegas, Nevada 89134
Attorneys for Global Test Equipment, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Statement of Jurisdiction

The Court has jurisdiction over this matter under Sections 157 and 1334 of title 28 of the United States Code. Further, this is a core proceeding under Section 157(b )(2) of title 28 of the United States Code. The venue of this case and this Motion is proper under Section 1408 of Title 28 of the United States Code.

The Debtor filed bankruptcy under Title 11 of the United States Code, Chapter 11, on February 9, 2011.

### II. Statement of Facts

1.    As stated above, Debtor filed Chapter 11 bankruptcy on February 9, 2011. Since that time a Chapter 11 trustee, Brian D. Shapiro, has been appointed in the case.

2.    The sole shareholder of the Debtor is Vito Longo. Mr. Longo is the father of the sole shareholder of GTE, Amy Perry, who operates the related entity out of Downers Grove, Illinois. Out of GTE's 11 total employees, 8 are family members of Mr. Longo (sons, daughters, grandson, son-in-laws, etc.).

3.    The Debtor's business interests are complimentary to GTE's business. In addition, the shareholders of GTE have an emotional interest in preserving the assets of the Debtor through GTE, as Debtor is regarded as a family enterprise.

4.    Since the trustee's appointment in March of 2011, GTE has negotiated in good faith for the purchase of Debtor's assets. GTE was in ongoing negotiations for the purchase of

the Debtor's assets when it was suddenly advised by the trustee that the Debtor had entered into a Purchase Agreement with a third party, Electro Rent Corporation, and would no longer entertain negotiations with GTE. At no time was GTE aware that the trustee was also negotiating with other potential buyers. In fact, GTE was in the process of obtaining financing to purchase the equipment, inventory and miscellaneous assets of the debtor not related to the leases and contracts and had requested an itemization of the same on hand with the Debtor in order to complete the financing package. Trustee refused to provide any further information on the assets once the Purchase Agreement with Electro Rent Corporation was signed. See attached Exhibit C incorporated herein by reference.

       5.     GTE has since obtained a copy of the pending motion seeking this Court's approval of the Purchase Agreement and believes that GTE's offer to purchase the assets of the Debtor would be more beneficial to the bankruptcy estate and Debtor's creditors than the Electro Rent Corporation offer for the following reasons.

       a.     GTE is willing to pay $12,200,000.00, or $1,115,709.00 more than the Electro Rent Corporation offer. This should provide sufficient additional sales proceeds to address any carve out for the trustee's statutory fee, attorneys' fees and accountants fees, as well as an unsecured creditor payment.

       b.     GTE will pay cash $8,500,000.00 on or before August 29, 2011 for the leases, rents and related contracts. GTE has a commitment from Harris Bank in Illinois ready to fund the loan. These funds have been available since May 2011. A copy of the commitment letter is attached hereto as Exhibit B and incorporated herein by reference.

       c.     GTE's offer contains no potential adjustments to the sales price.

       d.     The remaining $3,700,000.00 will be paid for the purchase of all remaining assets of the Debtor, including but not limited to lab equipment, stock inventory, parts and manuals. This payment will be in the form of a promissory note with FCC holding UCC1 rights or through collateralizing

1    the leases, rents and related contracts in favor of FCC, to be subordinated

2    to GTE's lender on the $8,500,000.00.  Payoff to FCC would occur within

3    6-12 months.

4    e.    GTE's offer is not contingent upon the purchase of the $3,700,000.00 for

5    the remaining assets of Debtor.  Rather, GTE is willing to purchase the

6    leases, rents and related contracts for $8,500,000.00 and allow the trustee

7    to sell the remaining assets of the Debtor to another entity for cash or other

8    terms as are deemed, in the Court's opinion, more prudent.  GTE believes

9    that the Debtor's assets excluding leases, rents and related contracts has a

10    market value of more than the $2,600,000.00 in an open bid/auction

11    environment with proper advertisement and solicitation that has not been

12    done to date.

13    f.    GTE is anxiously engaged in obtaining immediately financing for the

14    $3,700,000.00 on or before the hearing on Electro Rent corporation's

15    offer.  However, it was only recently provided the updated list of assets

16    (Docket 230 filed July 31, 2011) with which to procure the financing.

17

18    **III.  Statement of Law and Argument**

19    **A.    Trustee's sale, although a private sale, should be subject to overbidding.**

20    The trustee's motion to sell is brought pursuant to 11 U.S.C. §363(b)(1) and 11 U.S.C.

21    365(a).  GTE acknowledges the applicability of these provisions but questions whether the sale

22    solicitation process was sufficient and why trustee is not seeking overbids.  As cited in the trustee's

23    motion, *Walter v. Sun trust bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) suggests

24    that this Court consider a wide range of factors, including whether the notice of sale was sufficient.

25    Among numerous factors set forth in *In re Gulf Coast Oil Corp.*, 404 B.R. 407 (Bkrtcy. S.D. Tex.

26    2009), the Court stated an inquiry should be made as to whether the sale process encourages or

27    discourages bidding, and whether aggressive marketing of the asset sale occurred.  "Established

28    public auction markets provide the best assurance of full value at any given time. The absence of any

1    market is problematic." *Id.* at 424.

2         Seeking overbids and entertaining the same at the hearing on the trustee's motion could result

3    in additional funds paid to the unsecured creditors.  In this case, the trustee's motion advises the

4    Court that FCC holds a security interest in all assets of the Debtor in the amount of "$11,899,378.43,

5    plus other sums including without limitation unpaid interest, costs, late fees and attorney fees".  See

6    trustee's Motion, Page 5, Lines 11-12.  GTE's offer would satisfy FCC's claim in full and likely

7    leave funds to pay the trustee's fee, trustee's administrative costs, and unsecured creditors.

8

9    **B.    GTE's bid should be entertained and accepted as the best offer.**

10        GTE is willing to enter into a similar purchase agreement containing those terms set forth

11   in Article II, Article V, Article VII through Article IX, and Article XI through XII are acceptable to

12   GTE.

13        With regard to Article III of the Electro Rent Corporation Purchase Agreement, GTE is

14   willing to pay $1,115,709.00 more than the Electro Rent Corporation offer, with $8,500,000.00 cash

15   for all leases, rents and related contracts.  GTE will close on the $8,500,000.00 no later than August

16   27, 2011.  GTE is willing to pay an additional $3,700,000.00 for the purchase of all remaining assets

17   of the Debtor, including but not limited to lab equipment, stock inventory, parts and manuals.  This

18   payment will either be in the form of a promissory note with FCC holding UCC1 rights or through

19   collateralizing the leases, rents and related contracts in favor of FCC, to be subordinated to GTE's

20   lender on the $8,500,000.00.  Payoff to FCC would occur within 6-12 months.  There would be no

21   Purchase Price Adjustments as set forth in the Electro Rent Corporation Purchase Agreement,

22   Paragraph 3.4.

23        GTE is willing to accept those provisions dealing with Closing under Article IV of the

24   Electro Rent Corporation  Purchase Agreement with the revision of the Closing Date being no later

25   than August 29, 2011.

26        GTE is willing to accept those provisions dealing with Representations and Warranties of

27   Buyer with the revision to paragraph 6.4 Financing to provide that the $8,500,000.00 is available to

28   it, and the remainder $3,700,000.00 to be paid over 6-12 months and collateralized in favor of FCC.

1        GTE is willing to accept those provisions dealing with Termination under Article X of the

2   Electro Rent Corporation Purchase Agreement with the revision of the Closing Date being August

3   29th, not August 15th.

4        GTE's offer is simply the better offer.  The trustee can sell Debtor's other assets, excluding

5   the leases, rents and related contracts, to those other interested buyers who submitted offers, which

6   remain confidential and unavailable to GTE for inspection.

7        Finally, now that GTE has the updated list of assets in hand, it is anxiously attempting to

8   obtain financing for the $3,700,000.00 to provide an all cash offer to the trustee.  GTE's ability to

9   do so has been hampered by the trustee's initial unwillingness to timely provide this information.

10  As such, GTE should be given additional time to match the all cash offer of Electro Rent

11  Corporation.

12

13  **C.      Objection to Sale.**

14       GTE is the purchaser of Claim No. 6 filed by United Parcel Service and has been assigned

15  said Claim by United Parcel Service.  GTE therefore has a pecuniary interest in Debtor's case.  As

16  such, GTE is a party in interest and entitled to object to the proposed sale to Electro Rent

17  Corporation. *In re Vona,* 333 B.R. 191 (Bkrtcy. E.D.N.Y. 2005).  GTE objects to the proposed sale

18  based upon the grounds set forth above.  GTE believes that its offer will result in a higher payment

19  to FCC and at least what the trustee, trustee's professionals, and general unsecured creditors would

20  receive under the Eletro Rent Corporation sale.

21

22

23

24

25

26

27

28

1        WHEREFORE, GTE, respectfully requests:

2       1.    This Court accept its offer to purchase under the terms and conditions set forth herein;

3  and

4       2.    Award all other remedies the Court may find just and proper.

5       DATED: August 3, 2011.

6                     GOLDSMITH & GUYMON, P.C.

7

8            By:  _____
                     Marjorie A. Guymon, Esq.

9                     Nevada Bar No. 4983
                     Nedda Ghandi, Esq.

10                   Nevada Bar No. 11137
                    2055 Village Center Circle

11                   Las Vegas, Nevada 89134
                    Attorneys for Global Test Equipment, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

MARJORIE A. GUYMON, ESQ.
Nevada Bar No. 4983
Email: mguymon@goldguylaw.com
NEDDA GHANDI, ESQ.
Nevada Bar No. 11137
Email: nghandi@goldguylaw.com
**GOLDSMITH & GUYMON, P.C.**
2055 Village Center Circle
Las Vegas, Nevada 89134
Telephone: (702) 873-9500
Facsimile: (702) 873-9600
Attorneys for Global Test Equipment, Inc.

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | BE-S 11-11816-LBR |
| | ) | Chapter 11 |
| EQUIPMENT MANAGEMENT TECHNOLOGY, | ) | |
| | ) | |
| | ) | Hearing Date: 8/11/11 |
| Debtors. | ) | Hearing Time: 10:30 a.m. |
| | ) | |

**<u>DECLARATION OF AMY PERRY IN SUPPORT OF GLOBAL TEST EQUIPMENT, INC.'S COMPETING OFFER TO PURCHASE DEBTOR'S ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, INTERESTS AND ENCUMBRANCES AND ASSUMPTION AND ASSIGNMENT OF VARIOUS EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND OBJECTION TO PROPOSED SALE OF ASSETS TO ELECTRO RENT CORPORATION</u>**

Comes now Amy Perry, having been duly sworn upon her oath, and under penalties of perjury states as follows:

1.    I am sole shareholder of Global Test Equipment, Inc. ("GTE"), and have personal knowledge of the facts contained herein, except those asserted upon information and belief, and as to those statements I believe them to be true.

2.    GTE retained Goldsmith & Guymon, P.C., on August 2, 2011, after having been advised by its local counsel Elizabeth Bates, Esq. that the trustee herein had executed a purchase agreement for the sale of all the assets of the Debtor to Electro Rent Corporation.

3.    GTE would like to purchase the assets of the Debtor, and has been engaged through Ms. Bates with the trustee for the purchase of the assets of the Debtor.

4.    The sole shareholder of the Debtor is Vito Longo.  Mr. Longo is my father.  Out of GTE's 11 total employees, 8 are family members of Mr. Longo (sons, daughters,

grandson, son-in-laws, etc.).

5. The Debtor's business interests are complimentary to GTE's business. In addition, I and the employees of GTE have an emotional interest in preserving the assets of the Debtor through GTE, as Debtor is regarded as a family enterprise.

6. Since the trustee's appointment in March of 2011, GTE has negotiated in good faith for the purchase of Debtor's assets. GTE was in ongoing negotiations for the purchase of the Debtor's assets when it was suddenly advised by the trustee that the Debtor had entered into a Purchase Agreement with a third party, Electro Rent Corporation, and would no longer entertain negotiations with GTE. At no time was GTE aware that the trustee was also negotiating with other potential buyers. In fact, GTE was in the process of obtaining financing to purchase the equipment, inventory and miscellaneous assets of the debtor not related to the leases and contracts and had requested an itemization of the same on hand with the Debtor in order to complete the financing package. Trustee refused to provide any further information on the assets once the Purchase Agreement with Electro Rent Corporation was signed.

7. GTE has since obtained a copy of the pending motion seeking this Court's approval of the Purchase Agreement and believes that GTE's offer to purchase the assets of the Debtor would be more beneficial to the bankruptcy estate and Debtor's creditors than the Electro Rent Corporation offer.

8. GTE is willing to pay $12,200,000.00, or $1,115,709.00 more than the Electro Rent Corporation offer. This should provide sufficient additional sales proceeds to address any carve out for the trustee's statutory fee, attorneys' fees and accountants fees, as well as an unsecured creditor payment.

9. GTE will pay cash $8,500,000.00 on or before August 29, 2011 for the leases, rents and related contracts. GTE has a commitment from Harris Bank in Illinois ready to fund the loan. These funds have been available since May 2011. A true and correct copy of the commitment letter is attached to the Competing Offer and Objection as Exhibit B.

10.     GTE's offer contains no potential adjustments to the sales price.

11.     The remaining $3,700,000.00 will be paid for the purchase of all remaining assets of the Debtor, including but not limited to lab equipment, stock inventory, parts and manuals. This payment will be in the form of a promissory note with FCC holding UCC1 rights or through collateralizing the leases, rents and related contracts in favor of FCC, to be subordinated to GTE's lender on the $8,500,000.00. Payoff to FCC would occur within 6-12 months.

12.     GTE's offer is not contingent upon the purchase of the $3,700,000.00 for the remaining assets of Debtor. Rather, GTE is willing to purchase the leases, rents and related contracts for $8,500,000.00 and allow the trustee to sell the remaining assets of the Debtor to another entity for cash or other terms as are deemed, in the Court's opinion, more prudent.

13.     GTE believes that the Debtor's assets excluding leases, rents and related contracts has a market value of more than the $2,600,000.00 in an open bid/auction environment with proper advertisement and solicitation that has not been done to date.

14.     GTE is anxiously engaged in obtaining immediately financing for the $3,700,000.00 on or before the hearing on Electro Rent corporation's offer. However, it was only recently provided the updated list of assets with which to procure the financing.

15.     GTE is willing to enter into a similar purchase agreement containing those terms set forth in Article II, Article V, Article VII through Article IX, and Article XI through XII are acceptable to GTE.

16.     With regard to Article III of the Electro Rent Corporation Purchase Agreement, GTE is willing to pay $1,115,709.00 more than the Electro Rent Corporation offer, with $8,500,000.00 cash for all leases, rents and related contracts. GTE will close on the $8,500,000.00 no later than August 27, 2011. GTE is willing to pay an additional $3,700,000.00 for the purchase of all remaining assets of the Debtor, including but not limited to lab equipment, stock inventory, parts and manuals. This payment will either be in the form of a promissory note with FCC holding UCC1 rights or through collateralizing

the leases, rents and related contracts in favor of FCC, to be subordinated to GTE's lender on the $8,500,000.00. Payoff to FCC would occur within 6-12 months. There would be no Purchase Price Adjustments as set forth in the Electro Rent Corporation Purchase Agreement, Paragraph 3.4.

17.   GTE is willing to accept those provisions dealing with Closing under Article IV of the Electro Rent Corporation Purchase Agreement with the revision of the Closing Date being no later than August 29, 2011.

18.   GTE is willing to accept those provisions dealing with Representations and Warranties of Buyer with the revision to paragraph 6.4 Financing to provide that the $8,500,000.00 is available to it, and the remainder $3,700,000.00 to be paid over 6-12 months and collateralized in favor of FCC.

19.   GTE is willing to accept those provisions dealing with Termination under Article X of the Electro Rent Corporation Purchase Agreement with the revision of the Closing Date being August 29th, not August 15th.

20.   GTE is the purchaser of Claim No. 6 filed by United Parcel Service and has been assigned said Claim by United Parcel Service.  GTE objects to the proposed sale based upon the grounds that its offer will result in a higher payment to FCC and at least what the trustee, trustee's professionals, and general unsecured creditors would receive under the Eletro Rent Corporation sale.

DATED: August 5, 2011.

_Amy Perry_ (signature)

AMY PERRY

SUBSCRIBED AND SWORN TO BEFORE ME,
A NOTARY PUBLIC, IN DuPage COUNTY,
Illinois STATE, ON THE 5th DAY OF
August , 2011.

_BR_ (signature)

OFFICIAL SEAL
STERLING B. PRICE
Notary Public - State of Illinois
My Commission Expires Mar 17, 2012

# EXHIBIT B



May 11, 2011

Global Test Equipment
1424 Centre Circle
Downers Grove, IL

Dear Amy:

I am pleased to inform you that Harris has final form approved your request for financing and offer you the bank's **COMMITMENT** subject to the terms and conditions below. Please note that these represent the primary terms of the transaction and are not inclusive of all terms and conditions, which will be part of final loan documentation.

The Bank has completed the final underwriting and is preparing loan documentation with a projected closing date of July 15th or sooner depending on the final structure and terms of the purchase agreement between borrower and seller/courts.

| | |
|---|---|
| **Borrower:** | Global Test Equipment, Inc |
| **Guarantors:** | Amy Perry |
| **Lender:** | Harris N.A |
| **Purpose:** | To provide acquisition financing for purchase of all of assets of EMT (Equipment Management Technology) including but not limited to the assets on lease and or rent with Northrop Grumman to be confirmed in asset purchase agreement subject to bank review and acceptance. |
| **Loan Amount:** | $8,500,000.00 |
| **Term:** | 2years |
| **Amortization:** | 3 year amortization schedule. |

**Rate:**            A fixed rate of 4.85%

*\*\* All fixed rate quotes are good through 6/15/11. In the event the subject loan closes after 6/15/11, the rates will be subject to change based on market conditions at the date of documentation.*

**Repayment:**

The borrower will be required to make fixed monthly principal payments plus accrued interest based on a 3 year amortization period with the balance due at maturity. Estimated at $236,111 in principal and $34,354 in interest per month for the first year.

Additionally, the borrower will be subject to cash re-capture requirement allocating 50% of additional cash flows from the purchased equipment in excess of tax liabilities and agreed upon additional operating expenses to the principal balance outstanding.

**Lender Fee:**      $8,500 to Harris N.A. bank with the borrower responsible for all Out of pocket expenses incurred with the underwriting, documentation and recording of the loan and lease assignments.

**Collateral:**

1. A first lien UCC filing on Global Test Equipment **(In Place)**
2. Satisfactory release of the acquired assets and leases and rentals streams from the seller's lender **(At Closing)**
3. Execution of underlying leases and rentals with Northrop Grumman to the borrower Global Test Equipment and executed assignments of leases from NG to Harris N.A. **(At Closing)**
4. Any all documents deemed appropriate to protect the interest of the borrower and the bank in the underlying equipment and related cash flows.

**Prepayment:**      The borrower will be subject to a make whole penalty for the unwinding of the underlying term loan for early termination due to refinance from another institution.

## GENERAL TERMS AND CONDITIONS:

**Appraisal:**        Subject to appraisal of the equipment at a minimum $9,250,000 on a Forced Liquidation Value **(CONFIRMED AND ACCEPTED AT VALUE)**

## OTHER TERMS AND CONDITIONS:

**Financial Reporting:**       The Borrower shall provide the Bank with the following financial information on an ongoing basis:

- Annual Audited financial statements **(Condition to be met)**

- Compiled quarterly financial statements **(Condition Met)**

- Tax return for Global Test Equipment **(Condition Met)**

- Monthly Leasing/Rental Activity Report: To include maturity dates status of maturing leases to be tracked and monitored against projected release and rent percentages reports due the 15th of the month **( Report Format accepted)**

- Monthly Inventory Sales Report: To include equipment sold and sales price received for acquired equipment **( Report Format Accepted)**

**Financial Covenants:**

1) Borrower shall agree to maintain minimum debt service coverage of 1:25 to 1:0, to be measured quarterly starting 12/31/10. **(CONDITION MET AT 12/31/10)**

   *DSC will be defined as Consolidated Net income for Global Test Equipment plus interest, depreciation, and amortization expense less shareholder withdrawals divided by annual debt service requirements (principal and interest payments of all borrowers).*

2) Borrower shall agree to maintain minimum Tangible Net Worth of $2,250,000 at closing, increasing to $3,500,000 at 12/31/11, $4,500,000 at 12/31/12 and $5,000,000 at 12/31/13 to be measured annually starting 12/31/10. **(CONFIRMED AND ACCEPTED)**

3) Cash Flow Recapture: The borrower will be subject to a cash re-capture requirement allocating 50% of cash flows generated from the Lease, Rental or Sale of the assets being acquired in excess of tax liabilities and agreed upon additional operating expenses to the principal balance outstanding.

Additional principal reduction of $200M per quarter for year 1 and $200M per quarter in year 2 based on attaining projected cash flows.

**Expenses:**    All reasonable out-of pocket expenses incurred by the Bank in connection with the proposed credit facilities shall be paid by the Borrower.

**Depository:**    Harris will be the primary depository for the Borrower and the practice for the duration of the loan facilities expressed in this proposal.

All cash flows from the acquired assets and corresponding payments from the lessee/ renter NG will be deposited with Harris N.A

**Loan
Documents:**    Loan documentation shall be satisfactory in form and substance to Harris, BMO Capital and its legal counsel.

The commitment will expire on July 31, 2011. As noted this letter represents a commitment however the bank reserves the right to modify the commitment pending review and acceptance of material items noted in this document. Should you have any questions regarding the contents of this letter, please contact me at your convenience. Again, we appreciate the opportunity to partner with GTE on this opportunity and look forward to helping you close this transaction and continue to grow in the future.

Sincerely,
Harris N.A.

Raymond P. Smith
Vice President
Harris N.A
503 N. Washington St
Naperville, IL 60563
630.420-3357

Acknowledged and agreed to this _____ day of _____ ,2011

By: _____

Its: _____

# EXHIBIT C

**Marjorie Guymon**

| | |
|---|---|
| **From:** | Brian Shapiro, Trustee [trustee@trusteeshapiro.com] |
| **Sent:** | Wednesday, July 27, 2011 3:11 PM |
| **To:** | 'Elizabeth Bates'; 'Amy Perry' |
| **Subject:** | EMT |
| **Importance:** | High |

Out of courtesy, I wanted to let you know that earlier today the bankruptcy estate entered into an agreement to sell the assets of EMT to Electro Rent Corporation for $11,084,291. Based upon that agreement, I am unable to provide you with any further financial information of EMT. I will make sure that you receive a copy of the motion to sell which is being requested to be heard on shorten time.

Please be guided accordingly.

~ Brian

# ****PLEASE NOTE the contact information below has been updated to provide our new address effective June 17, 2011. The phone number and fax number have remained the same*****

Brian D. Shapiro, Trustee
228 S. 4th St., Ste 300
Las Vegas, NV 89101-5709
Tel: (702) 386-8600
Fax: (702) 383-0994
Email: trustee@trusteeshapiro.com
www.trusteeshapiro.com

This e-mail message is a confidential communication from the Brian D. Shapiro, Trustee and is intended only for the named recipient(s) above and may contain information that is a trade secret, proprietary, privileged or attorney work product. If you have received this message in error, or are not the named or intended recipient(s), please immediately notify the sender at 702.386.8600 and delete this e-mail message and any attachments from your workstation or network mail system.

Please consider the environment before printing this e-mail

8/5/2011

**Marjorie Guymon**

| | |
|---|---|
| **From:** | Elizabeth Bates [ebates@HuckBouma.com] |
| **Sent:** | Monday, August 01, 2011 5:57 AM |
| **To:** | Brian Shapiro |
| **Cc:** | Amy Perry |
| **Subject:** | RE: Proposal to purchase assets 14974-2 |

Dear Brian,

First of all I was shocked to realize that while we were discussing a purchase of the EMT assets on behalf of GTE, you had another offer pending and you did not even mention it.  You also repeatedly told me that there was no way you could get the time for approval shortened and yet apparently you are trying to do that for the new buyer.  Lastly, Amy tells me that there is not a copy of the Purchase Agreement or Motion to Shorten time in her drop box, which is also disturbing, because my experience in bankruptcy court is that there must be full disclosure to encourage and allow for other bids.  Is there a reason that this offer must be kept secret?  Why the change in procedure for this offer?  Please forward to me today, a copy of the Motion to Shorten time, Motion for Approval of Sale and the Purchase Agreement.  Thank you.

**From:** Brian Shapiro [mailto:bshapiro@brianshapirolaw.com]
**Sent:** Tuesday, June 21, 2011 4:15 PM
**To:** Elizabeth Bates
**Cc:** 'Amy Perry'
**Subject:** RE: Proposal to purchase assets 14974-2

Elizabeth:

I just received your email which was different from Amy's email.  First, I am not sharing the offer with Sam Schwartz.  Second, I have shared the offer with FCC's counsel and Vito's counsel.  I will advise them in a moment with a copy to you not to share such offer with any third party (per your request).  My office will not share your offer to any other party unless it is done for the Court.

~ B


# ****PLEASE NOTE the contact information below has been updated to provided our new address effective June 17, 2011. The phone number and fax number have remained the same*****


Brian D. Shapiro, Trustee
228 S. 4th St., Ste 300
Las Vegas, NV  89101-5709
Tel: (702) 386-8600
Fax: (702) 383-0994
Email:  trustee@trusteeshapiro.com
www.trusteeshapiro.com

Page 2 of 2

This e-mail message is a confidential communication from the Brian D. Shapiro, Trustee and is intended only for the named recipient(s) above and may contain information that is a trade secret, proprietary, privileged or attorney work product. If you have received this message in error, or are not the named or intended recipient(s), please immediately notify the sender at 702.386.8600 and delete this e-mail message and any attachments from your workstation or network mail system.

⊕ Please consider the environment before printing this e-mail

**Marjorie Guymon**

| | |
|---|---|
| **From:** | Elizabeth Bates [ebates@HuckBouma.com] |
| **Sent:** | Tuesday, August 02, 2011 1:28 PM |
| **To:** | Marjorie Guymon |
| **Subject:** | FW: EMT 14974-2 |
| **Importance:** | High |
| **Attachments:** | RE: Proposal to purchase assets 14974-2; EMT |

**From:** Brian Shapiro [mailto:bshapiro@brianshapirolaw.com]
**Sent:** Monday, August 01, 2011 6:31 PM
**To:** Elizabeth Bates
**Cc:** 'Amy Perry'; shelley@krohnlawoffice.com
**Subject:** EMT
**Importance:** High

Elizabeth:

I am in receipt of your email dated August 1, 2011. The following are answers to your questions/comments:

(1) <u>Failure to disclose that I was discussing other offers</u> – as you are aware, all parties have signed confidentiality agreements. I was unable to disclose to you any other discussions which have taken place. Similarly, unless you provided authority, I was unable to provide any entity any information about GTE's offer.

(2) <u>Requesting Shorten Time</u> – considering the circumstances surrounding the offer which is over 2.5 million dollars more that GTE's offer and the time frame in the agreement, a request to have it heard on shorten time was made. Whether the Court would have granted such a request was obviously unknown. The Court did grant the motion and the hearing is set for Thursday, August 11, 2011.

(3) <u>Documents in Drop Box</u> - I have made sure that all of the documents that were filed with the Court were placed in the GTE-EMT drop box. There is a separate folder in such box entitled Bankruptcy Filings. The folder is up to date as of July 31, 2011. I am also emailing you under separate cover the original motion and order shortening time. Those documents and all others are in the drop box.

(4) <u>Allegations of Change in Procedure/Secret Offer</u> - There is no change in procedure. As indicated above, all discussions are kept confidential based upon the confidentiality agreement. Upon entering into the agreement, you and all other interested parties were immediately advised that such agreement was signed. A copy of my email is attached. That email was sent to you shortly after the agreement was signed.

~ Brian


**\*\*\*\*PLEASE NOTE the contact information below has been updated to provide our new address effective June 17, 2011. The phone number and fax number have remained the same\*\*\*\*\***

8/5/2011

Brian D. Shapiro, Trustee
228 S. 4th St., Ste 300
Las Vegas, NV  89101-5709
Tel: (702) 386-8600
Fax: (702) 383-0994
Email:  trustee@trusteeshapiro.com
www.trusteeshapiro.com

This e-mail message is a confidential communication from the Brian D. Shapiro, Trustee and is intended only for the named recipient(s) above and may contain information that is a trade secret, proprietary, privileged or attorney work product. If you have received this message in error, or are not the named or intended recipient(s), please immediately notify the sender at 702.386.8600 and delete this e-mail message and any attachments from your workstation or network mail system.

Please consider the environment before printing this e-mail