E-Filed 8-29-2011

SHELLEY D. KROHN, LTD.
SHELLEY D. KROHN, ESQ.
Nevada Bar No. 5040
E-mail: shelley@krohnlawoffice.com
228 S. 4th Street, Suite # 300
Las Vegas, Nevada 89101
Telephone: (702) 421-2210
Facsimile: (702) 366-1939
*Attorneys for Chapter 11 Trustee,
Brian D. Shapiro*

LAW OFFICE OF BRIAN D. SHAPIRO, LLC
BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772
E-mail: bshapiro@brianshapirolaw.com
228 S. 4th Street, Suite #300
Las Vegas, NV 89101
Telephone: (702) 386-8600
Facsimile: (702) 383-0600
*Attorneys for Chapter 11 Trustee,
Brian D. Shapiro*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

In re:

EMT LIQUIDATING,

Debtor.

Case No.: BK-S-11-11816-LBR
Chapter 11

Date:
Time:

## AMENDED MOTION TO CONVERT CASE TO A CHAPTER 7

Equipment Management Technology, a Nevada corporation ("EMT" or "Debtor"), by and through its Chapter 11 trustee, Brian D. Shapiro (the "Trustee"), respectfully submits his amended motion[1] (the "Motion") for an order converting the case to a chapter 7 proceeding. This motion is based upon the attached points and authorities, the Declaration in Support and any oral argument that this Court may permit. The Trustee also requests this Court to take judicial notice of all pleadings and prior order of the Court.

---

[1] The motion was amended to correct the date of closing of the sale which is August 25, 2011 not August 24, 2011.

## SUMMARY OF RELIEF REQUESTED

This Motion seeks to convert the Chapter 11 case to a Chapter 7 proceeding.

## STATEMENT OF FACTS

**A.     EMT's Business, Loan with FCC, and Pre-Petition Receiver.**

1. EMT operated a small business which offered rental and leases of test and measurement equipment for the aerospace industry. EMT also calibrated and maintained such equipment. EMT's principal was Vito Longo ("Longo") who is the sole shareholder of EMT.

2. On August 25, 2008, EMT, as borrower, and FCC, LLC, d/b/a First Capital Western Region, LLC ("FCC"), as lender, entered into a Loan and Security Agreement (as amended or otherwise modified from time to time, the "Loan Agreement" and together with all other loan documents referenced herein, the "Loan Documents") in the original principal amount of up to $22,000,000.00 (the "Indebtedness"). Pursuant to the Loan Agreement, FCC made available advances and extended financial accommodations to or on behalf of EMT. Consistent with the Loan Documents, all payments from EMT's customers were to be directed into a lockbox account (the "Lockbox Account") under FCC's sole and exclusive control.

**B.     EMT's Chapter 11 Case, Trustee Appointment and Cash Collateral Stipulation.**

3. On February 9, 2011 (the "Petition Date"), EMT filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case (the "Chapter 11 Case").[2]

4. On February 23, 2011, the Court entered an <u>Interim Order Regarding Debtor's Emergency Motion for Use of Cash, Including Cash Collateral</u> (the "Interim Order") [ECF No. 76], thereby granting the Debtor interim approval, subject to the terms and conditions therein, for the limited and emergency use of cash collateral pending a final hearing.

---

[2] All references to "Chapter" and "Section" herein are to title 11 of the U.S. Code (the "Bankruptcy Code") *and all* references to a "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

5. Debtor, via Longo, initially operated its business as a debtor-in-possession, however, on March 15, 2011, the Court entered an order directing the appointment of a Chapter 11 trustee (the "Trustee Order") [ECF No. 134] over the Debtor pursuant to Section 1104(a)(2) of the Bankruptcy Code. On March 16, 2011, the Court entered an order approving the appointment of the Trustee as Chapter 11 trustee [ECF No. 141]. The Trustee now has full power and authority to operate and manage the Debtor's business and affairs.

6. On June 15, 2011, and after conducting a careful review of the applicable Loan Documents, the Trustee filed a <u>Motion for Final Approval of Stipulation Authorizing Use of Cash Collateral by Debtor and Granting Adequate Protection</u> [ECF No. 192] (the "Cash Collateral Motion"), attached to which was a proposed <u>Stipulation Authorizing the Use of Cash Collateral by Debtor and Granting Adequate Protection</u> (the "Cash Collateral Stipulation"). On June 29, 2011, the Court held a hearing on the Cash Collateral Motion and, without any opposition, orally approved it, and thereafter entered a written order approving it [ECF No. 200].

7. The Cash Collateral Stipulation imposed certain case "milestones" on the Trustee, including the following: (a) requiring, by October 1, 2011, to have an order entered by the Court, and on terms and conditions satisfactory to FCC, authorizing the sale of all or substantially all of the Debtor's assets pursuant to Section 363 of the Bankruptcy Code, or (b) failure, by December 1, 2011, to close on a sale of all or substantially all of the Debtor's property. <u>See</u> Cash Collateral Stipulation, §§ 10(m) and (n).

8. After proper investigation, the Trustee made various admissions in the Cash Collateral Stipulation as follows: (a) FCC has a valid, binding, enforceable, unavoidable, and perfected first priority security interest in and liens on the Collateral, including also Cash Collateral; (b) FCC's liens are not subject to avoidance, re-characterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the obligations under the Loan Agreement and the other Loan Documents referred therein constitute legal, valid, binding, and non-avoidable obligations of the Debtor that, except for the stay of enforcement arising from Section 362 of the Bankruptcy Code, are enforceable in accordance with the terms of the Loan Agreement and such other Loan Documents; and (d) the Debtor and its estate have no offsets,

defenses, claims, objections, challenges, and/or causes of action, including, without limitation, claims under Chapter 5 of the Bankruptcy Code to any of the obligations or against FCC; (e) as of the Petition Date, EMT owed FCC the principal sum of not less than $11,899,378.43, plus such other sums that may be allowed under the Loan Documents, including without limitation unpaid interest, costs, late fees, and attorneys' fees. See id. at ¶ K.

9. The Cash Collateral Stipulation also provided for a Challenge Period (as defined therein), whereby any party other than the Debtor, the estate, or the Chapter 11 Trustee wishing to assert and challenge to the validity, perfection, priority or enforceability of FCC's Loan Documents, or to prosecute any action for preferences, fraudulent transfers or other avoidance actions pursuant to Chapter 5 of the Bankruptcy Code, equitable subordination, or any other claims of causes of action against FCC (the "Claims or Defenses") had to do so on or before August 1, 2011. See id. at ¶ 9(a).

10. If no challenge were made within the Challenge Period, the Cash Collateral Stipulation provided as follows: (1) the liens pursuant to the Loan Documents shall have been deemed to have been, as of the Petition Date, legal, valid, binding, perfected, not subject to recharacterization, and otherwise unavoidable; (2) the prepetition obligations under the Loan Documents shall be deemed allowed in full and fully secured claims within the meaning of Section 506 of the Bankruptcy Code for all purposes in connection with this Chapter 11 Case and in any case under Chapter 7 of the Bankruptcy Code upon conversion; (3) the Debtor's Stipulations shall be binding on all creditors, interest holders and parties in interest in the Chapter 11 case or any successor case upon conversion to Chapter 7; and (4) all Claims and Defenses shall be deemed to have been forever relinquished and waived as to each and every party in interest in this case. See id. at ¶ 9(b). Further, the Cash Collateral Stipulation provided that if no challenge were made within the Challenge Period, then all Claims or Defenses were deemed to have been forever relinquished and waived as to all parties in interest. See id. at 9(c).

C. **The Trustee's Sale Motion and Proposed Purchase of EMT by ERC.**

11. On July 27, 2011, the Chapter 11 Trustee filed his Motion for an Order Authorizing and Approving the: (I) Sale of Substantially All of the Debtor's Assets to Electro

Rent Corporation Free and Clear of All Claims, Liens, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Various Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief [ECF No. 209] (the "Sale Motion"). The Sale Motion requested court approval of an Asset Purchase Agreement (the "APA") with Electro Rent Corporation, a California corporation ("ERC"), as buyer, for the purchase of substantially all of the Debtor's assets for a sales price of $11,084,291, less various potential adjustments including but not necessarily limited to an escrowed sum of $500,000. The Sale Motion also requested the approval of the assumption and assignment of various executory contracts to ERC as part of the purchase. FCC consented to this sale, subject to its liens attaching to the proceeds of such sale.

12. On August 11, 2011, the Court held a hearing on the Sale Motion and orally approved it. On August 12, 2011, the Court entered an Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of Debtor Outside the Ordinary Course of Business; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Interests and Encumbrances; (C) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases; and (D) Granting Related Relief (the "Sale Order") [ECF No. 269]. The Sale Order approved the sale of substantially all of the Debtor's assets to ERC.

13. The APA contemplated that after approval of the sale, the Trustee file a motion requesting the Bankruptcy Court to change the name of the Debtor.

14. On August, 2011 the Trustee filed a motion to change of the name of the Debtor and on August 23, 2011, the Court granted the motion [ECF No. 275 and 280].

15. On August 25, 2011, the sale to ERC closed and substantially all of the assets of the Debtor have been sold and removed from the premises.

16. There still remains a variety of assets on the Debtor's premises which needs to be sold.

17. FCC, pursuant to its contractual rights with Longo Properties will be taking control of the Debtor's location for a period of approximately 60 days.

18. At this time, the Debtor is no longer operating and the Trustee is only seeking to liquidate the remaining assets of the Debtor.

## LEGAL ANALYSIS

19. 11 U.S.C. §1112(b) provides authority for the court to a convert a Chapter 11 case to a Chapter 7 case for cause on a request of a party in interest and after a notice and hearing. See, In re Rubenstein 71 B.R. 777,778 (9th Cir. BAP 1987) and In re Johnston 149 B.R. 158, 161 (9th Cir BAP 1992).

20. 11 USC §1109(b) defines a "party in interest" to include the trustee.

21. Although cause is not defined under 11 U.S.C. 1112(b), the Court shall either convert the case unto a chapter 7 or dismiss the case, whichever is in the best interest of creditors. Some reasons to convert a case include the inability to effectuate a plan denial of confirmation and the inability to effectuate substantial consummation of a confirmed plan. See generally, 11 USC 1112(b)(1), (5) (7).

22. In this case, the Trustee, pursuant to 11 USC 363(b) has sold substantially all of the Debtor's assets to a third party. The sale resulted in $300,000.00 be carved out to the Bankruptcy Estate and the remainder of the sale proceeds being required to be paid to the secured creditor. At this time, there is no reason to remain in a chapter 11 proceeding as the company is no longer operating, is only liquidating its remaining assets and administering the carved out funds to the creditors of the Estate. Therefore, conversion of the case to a Chapter 7 is appropriate.

## CONCLUSION

WHEREFORE, the Trustee requests that the Court enter an order in substantially the form as attached hereto as Exhibit "1," thereby authorize the conversion of the case to a Chapter 7.

DATED: August 25, 2011.

LAW OFFICE OF BRIAN D. SHAPIRO, LLC

By: _____
BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772
E-mail: bshapiro@brianshapirolaw.com
228 S. 4th Street, Suite #300
Las Vegas, NV 89101
Telephone: (702) 386-8600
Facsimile: (702) 383-0600
*Attorneys for Chapter 11 Trustee,*
*Brian D. Shapiro*

7

# *EXHIBIT 1*

SHELLEY D. KROHN, LTD.
SHELLEY D. KROHN, ESQ.
Nevada Bar No. 5040
E-mail: shelley@krohnlawoffice.com
228 S. 4th Street, Suite # 300
Las Vegas, Nevada 89101
Telephone: (702) 421-2210
Facsimile: (702) 366-1939
*Attorneys for Chapter 11 Trustee,*
*Brian D. Shapiro*

LAW OFFICE OF BRIAN D. SHAPIRO, LLC
BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772
E-mail: bshapiro@brianshapirolaw.com
228 S. 4th Street, Suite #300
Las Vegas, NV 89101
Telephone: (702) 386-8600
Facsimile: (702) 383-0600
*Attorneys for Chapter 11 Trustee,*
*Brian D. Shapiro*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

In re:

EMT LIQUIDATING

Debtor.

Case No.: BK-S-11-11816-LBR
Chapter 11

Date:
Time:

### ORDER CONVERTING THE CASE TO A CHAPTER 7

EMT Liquidating ("EMT" or "Debtor"), by and through its Chapter 11 trustee, Brian D. Shapiro (the "Trustee"), having filed its motion (the "Motion") to convert the case to a Chapter 7. The Court having reviewed the motion, good cause appearing therefore it is hereby

ORDERED, that the Trustee's motion is granted. It is further

ORDERED, that this case is hereby converted to a Chapter 7 and the Office of the United States Trustee is authorized to reappoint the Trustee.

Respectfully Submitted:

_____

SHELLEY D. KROHN, LTD.
SHELLEY D. KROHN, ESQ.
Nevada Bar No. 5040
E-mail: shelley@krohnlawoffice.com
228 S. 4th Street, Suite # 300
Las Vegas, Nevada 89101
Telephone: (702) 421-2210
Facsimile: (702) 366-1939
*Attorneys for Chapter 11 Trustee,*
*Brian D. Shapiro*

LAW OFFICE OF BRIAN D. SHAPIRO, LLC
BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772
E-mail: bshapiro@brianshapirolaw.com
228 S. 4th Street, Suite #300
Las Vegas, NV 89101
Telephone: (702) 386-8600
Facsimile: (702) 383-0600
*Attorneys for Chapter 11 Trustee,*
*Brian D. Shapiro*

In accordance with LR 9021, counsel submitting this document certifies as follows:

___ The court has waived the requirement of approval under LR 9021.

___ This is a chapter 7 or 13 case, and either with the motion, or at the hearing, I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

___ This is a chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

___ I certify that I have served a copy of this order with the motion, and no parties appeared or filed written objections.

###

2